UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:                                        Chapter 13

        Eric H. Richmond                      Case No. 14-41678 (CEC)

                        Debtor.

DECISION

APPEARANCES:


Eric H. Richmond                    Jordan S Katz, Esq.
227 4th Avenue                      Kozeny, McCubbin & Katz, LLP
Brooklyn, New York 11215            40 Marcus Drive, Suite 200
*Pro-se Debtor*                     Melville, New York 11747
                                    *Counsel for Select Portfolio Servicing, Inc. as*
                                    *servicing agent for U.S. Bank National Association*


CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of the debtor, Eric H. Richmond (the "Debtor"), objecting to the proof of claim filed by Select Portfolio Servicing, Inc. ("SPS") as servicing agent for U.S. Bank National Association ("U.S. Bank").  Because U.S. Bank has standing under applicable law to enforce the note and mortgage executed by the Debtor, it has standing to file a proof of claim.  Accordingly, for the reasons set forth below, the Debtor's objection to U.S. Bank's proof of claim is denied.

## JURISDICTION

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) (B), and (O), 28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND

Procedural History

This chapter 13 case was filed on April 7, 2014.  On October 12, 2014, SPS filed a proof of claim on behalf of U.S. Bank, as trustee, on behalf of the holders of the Asset Backed Securities Corporation Home Equity Loan Trust, Series NC 2005-HE8, Asset Backed Pass-Through Certificates, Series NC 2005-HE8 (the "Trust").  (Proof of Claim 5-1, 14-41678-CEC.) On October 25, 2014, SPS filed an amended proof of claim on behalf of U.S. Bank, as trustee of the Trust (the "Proof of Claim").  (Proof of Claim 5-2, 14-41678-CEC.)  The Proof of Claim, in the amount of $236,735.29, is based on a mortgage and note executed by the Debtor, secured by real property located at 66 Back Meadow Road, Nobleboro, Maine 04555 (the "Property").

Attached to the Proof of Claim are copies of the note and mortgage executed by the Debtor on August 11, 2005 in favor of New Century Mortgage Corporation ("New Century"); a change of payment statement; and an assignment dated April 18, 2012 by SPS as attorney-in-fact for New Century, assigning the mortgage from New Century to U.S. Bank, as trustee of the Trust.  (Proof of Claim 5-2, 14-41678-CEC.)  On November 13, 2014, the Debtor filed a motion objecting to the Proof of Claim (the "Motion"), based upon, among other things, lack of evidence of SPS's authority to execute a mortgage assignment on behalf of New Century.  (Mot. to Object/Reclassify/Reduce/Expunge Claims: Claim Number(s): 5, 14-41678-CEC, ECF No. 146).[1]  On January 16, 2015, U.S. Bank filed opposition to the Motion (the "Opposition"), attaching a copy of a limited power of attorney dated June 20, 2007 executed by New Century appointing SPS as attorney-in-fact authorized to, among other things, "execute, acknowledge, seal and deliver . . . assignments of deed of trust/mortgage and other recorded documents." (the "Power of Attorney").  (First Affirmation in Opp'n, ECF No. 182 at 46.)  On January 23, 2015, the Debtor filed a further affirmation in support of his Motion (the "Affirmation in Support").  (Affirmation in Further Supp., ECF No. 191.)

On March 17, 2015, a hearing was held on the Motion, at which U.S. Bank produced the original note, a copy of which was provided to the Debtor and received in evidence; each party was given an opportunity to submit additional briefing; and the record was closed. (Scheduling Order, ECF No. 217.)  On April 3, 2015, the Debtor filed an affirmation in further support (the "Second Affirmation in Support").  (Affirmation in Further Supp., ECF No. 220.)  On April 16, 2015, U.S. Bank filed an affirmation in opposition (the "Second Affirmation in Opposition").

---

[1] Unless otherwise indicated, citations to "ECF No." are to papers filed on the docket of Case Number 14-41678-CEC.

(Affirmation in Opp'n, ECF No. 224.)  On May 16, 2015, the Debtor filed an Affirmation in

Further Support.  (Affirmation in Further Supp., ECF No. 234.)

The New Century Bankruptcy Case

On April 2, 2007, New Century and certain of its affiliates filed chapter 11 petitions in

the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy

Court").  (In re New Century TRS Holdings, Inc., et al., 07-10416-BLS (Bankr. D. Del.)) (the

"New Century Bankruptcy").[2]  Prior to filing bankruptcy, New Century was engaged in the

business of originating and purchasing mortgage loans, and selling mortgage loans through loan

sales and securitizations.  (First New Century Disclosure Statement, Del. ECF No. 5395-11, at

20.[3])  During the course of its chapter 11 case, New Century conducted, with court approval,

various sales of its loans and servicing rights. Id., at 31-36.[4]

On July 15, 2008, the Delaware Bankruptcy Court confirmed New Century's chapter 11

plan (the "Original Plan"), which provided for the transfer of all of New Century's remaining

assets to a liquidating trust (the "Liquidating Trust"), to be administered by a liquidating trustee

(the "Liquidating Trustee"), to sell all New Century's assets, wind down its business, and pay

claims (the "First New Century Confirmation Order").  (Original Plan, Del. ECF No. 8596-2,3;

---

[2] On April 4, 2007, the Delaware Bankruptcy Court entered an order directing the joint administration of New Century's bankruptcy case with the bankruptcy case of New Century TRS Holdings, Inc.'s.  (Order (Revised) Directing Joint Administration of Related Chapter 11 Cases, 07-54598-BLS, ECF No. 4).  This Decision will refer to New Century Mortgage Corporation, New Century TRS Holdings, Inc., and their affiliates as "New Century". Citations to Del. ECF are to docket numbers of papers filed in In re New Century TRS Holdings, Inc., et al., 07-10416-BLS (Bankr. D. Del.).

[3] The docket entry for the First New Century Disclosure Statement appears on the Delaware ECF as "Certification of Counsel Re: (I) Disclosure Statement for First Am. Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of March 18, 2008 . . .," but will be cited as "First New Century Disclosure Statement."

[4] It is well established that federal courts have authority to take judicial notice of proceedings in other courts, where those proceedings are relevant to the matter at issue.  In re Allegheny, 86 B.R. 466, 469 (Bankr. W.D. Pa. 1988) (collecting cases). "Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions."  Johnson v. Levy, 812 F. Supp. 2d 167, 176 (E.D.N.Y. 2011) (quoting Schenk v. Citibank/Citigroup/Citicorp, No. 10–CV–5056, 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010)).

First New Century Confirmation Order, Del. ECF No. 8596-1[5]; First New Century Disclosure

Statement, Del. ECF No. 5395-11, at 9-10.)

By order dated June 16, 2009, the Delaware District Court reversed the First New

Century Confirmation Order, based on a finding that the plan effectuated an improper

substantive consolidation of the debtors and unfairly discriminated in favor of certain creditors.

(Mem. Op. Signed by Judge Sue L. Robinson on 6/16/09, Del. ECF No. 9686; In re New

Century TRS Holdings, Inc., 407 B.R. 576 (D. Del. 2009).) An amended plan was filed to

address these problems, and on November 20, 2009, the Delaware Bankruptcy Court entered an

order confirming New Century's second amended chapter 11 plan (respectively, the "Modified

Plan" and the "Second New Century Confirmation Order"). (Modified Plan, Del. ECF No. 9957-

2,3,4,5; Second New Century Confirmation Order, Del. ECF No. 9957-1. [6]) The Modified Plan,

like the Original Plan, provided for the liquidation of all of New Century's remaining assets

through the Liquidating Trust and for the transfer of New Century's assets to the trust as of the

effective date of the Original Plan. (Second New Century Confirmation Order, Del. ECF No.

9957-1, at 23-25.)

## DISCUSSION

The Debtor does not dispute that he executed the Note and Mortgage; nor does he

challenge the amount owed pursuant to the Note and secured by the Mortgage, as set forth in the

Proof of Claim. The Debtor's objection is based upon the contention that U.S. Bank lacks

standing to file a proof of claim because it has not shown that it holds the Note and Mortgage.

---

[5] The docket entry for the Original Plan and the First New Century Confirmation Order appears on the Delaware
ECF as "Order Confirming the Second Am. Joint Chapter 11 Plan of Liquidation of the Debtors and the Official
Committee of Unsecured Creditors Dated as of April 23, 2008," but will be cited as "Original Plan" and "First New
Century Confirmation Order."
[6] The docket entry for the Modified Plan and the Second New Century Confirmation Order appears on the Delaware
ECF as "Order Confirming the Modified Second Am. Joint Chapter 11 Plan of Liquidation Dated as of September
30, 2009," but will be cited as "Modified Plan" and "Second New Century Confirmation Order."

A properly-filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim," Fed. R. Bankr. P. 3001(f), and is "deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). "An objecting party 'bears the initial burden of production and must provide evidence showing the claim is legally insufficient' under 11 U.S.C. § 502." In re Lehman Bros. Holdings Inc., 519 B.R. 47, 53 (Bankr. S.D.N.Y. 2014) (quoting In re Arcapita Bank B.S.C.(c), 508 B.R. 814, 817 (S.D.N.Y.2014)).

A creditor's rights in bankruptcy arise "'from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code.'" Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co., 549 U.S. 443, 450, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007) (quoting Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000)). The rights of a mortgagee are determined by the state law governing the relevant mortgage instruments. See Nobelman v. American Sav. Bank, 508 U.S. 324, 113 S. Ct. 2106, 2110, 124 L. Ed. 2d 228 (1993). "Unless some federal interest requires a different result, there is no reason why interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979).

Here, U.S. Bank's claim is based upon its rights under the Note and Mortgage pursuant to applicable state law. U.S. Bank has standing to file a proof of claim in this case if, in the event of a default by the Debtor under the Note and Mortgage, U.S. Bank would have standing, under state law, to commence a foreclosure proceeding.

The first question arising in this inquiry is choice-of-law. The Property is located in Maine, and the Mortgage contains a choice-of-law provision which states that "[t]his [Mortgage] is governed by federal law and the law that applies in the place where the Property is located."

(Proof of Claim 5-2, 14-41678-CEC at 22.)  Where state law provides the rule of decision, a federal court will apply the law of the forum state.  In re Koreag, Controle et Revision S.A., 961 F.2d 341, 350 (2d Cir. 1992).  Under New York law, a choice-of-law provision, such as is contained in the Mortgage, will be given effect. "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir. 2000).  However, the parties in this matter did not address Maine law, but based their arguments, in briefing and at the hearing held on the Motion, solely upon New York law.  At least one federal court has held that where the parties do not raise the issue of choice-of-law, and cite exclusively to New York law, they have impliedly consented to the application of the New York law to the dispute.  Leser v. U.S. Bank Nat. Ass'n, No. 09-CV-2362 KAM MDG, 2013 WL 1952306, at *4 (E.D.N.Y. May 10, 2013).  This choice-of-law issue need not be resolved, however, because under either Maine or New York law, U.S. Bank has standing to file the Proof of Claim.

Under New York law, "[i]n a mortgage foreclosure action, a plaintiff has standing where it is the holder of both the mortgage and the underlying note when the action is commenced." Deutsche Bank Trust Co. Americas v. Vitellas, No. 14695/12, 2015 WL 3972098, at *4 (2d Dep't, July 1, 2015).  When a note is assigned, "'the mortgage passes with the debt as an inseparable incident.'" Id. (quoting U.S. Bank, N.A. v. Adrian Collymore, 68 A.D.3d 752, 754, 890 N.Y.S.2d 578, 580 (2d Dep't 2009)).  Therefore, a plaintiff, when not the original lender, may establish standing to foreclose under New York law "by showing either a written assignment of the underlying note or the physical delivery of the note prior to the

commencement of the foreclosure action." <u>Vitellas</u>, 2015 WL 3972098, at *4 (internal quotation marks omitted).[7]

Under Maine law, a party seeking to foreclose must also establish ownership of the note and mortgage; however where the plaintiff is not the original lender, the plaintiff must demonstrate not just ownership of the note, but also assignment of the mortgage.  In Maine, foreclosure is governed by statute.  <u>See</u> 14 M.R.S., § 6101-6326; <u>Bank of Am., N.A. v. Greenleaf</u>, 2014 ME 89, ¶ 8, 96 A.3d 700, 704.  Foreclosure of the mortgaged property may be sought by "the mortgagee or any person claiming under the mortgagee."  14 M.R.S. § 6321; <u>Greenleaf</u>, 2014 ME 89, ¶ 9, 96 A.3d 700, 704-05.  "Because foreclosure regards two documents—a promissory note and a mortgage securing that note—standing to foreclose involves the plaintiff's interest in both the note and the mortgage." <u>Greenleaf</u>, 2014 ME 89, ¶ 9, 96 A.3d 700, 705.  The Supreme Judicial Court of Maine has held that a party seeking a judgment of foreclosure, pursuant to 14 M.R.S. § 6321, must show "properly presented proof of ownership of the mortgage note and [evidence of the mortgage note and] the mortgage, including all assignments and endorsements of the note and the mortgage."[8]  <u>Greenleaf</u>, 2014 ME 89, ¶ 18, 96 A.3d at 708 (citing <u>Chase Home Fin. LLC v. Higgins</u>, 2009 ME 136, ¶ 11, 985 A.2d 508).

---

[7] In the Affirmation in Support, the Debtor provides a list of cases which he cites for the proposition that, under New York law, in order to establish standing to commence a foreclosure proceeding, a party must show that it holds both the note and the mortgage.  In all but one of these decisions, which are dated in 2007 and 2008, Justice Kurtz of Kings County Supreme Court denied the plaintiff in a foreclosure action a default judgment when the plaintiff submitted a mortgage assignment executed after the commencement of the foreclosure action purporting to retroactively effectuate assignment of the mortgage prior to the commencement of the case.  In the other decision, also by Justice Kurtz, the plaintiff did not attempt to retroactively assign the mortgage, and the court found that the plaintiff lacked standing because the mortgage was assigned to the plaintiff after the commencement of the foreclosure action.  None of these decisions is published, and all are overruled by the later Appellate Division, Second Department cases discussed above. <u>Deutsche Bank Trust Co. Americas v. Vitellas</u>, No. 14695/12, 2015 WL 3972098, at *4 (2d Dept, July 1, 2015); <u>U.S. Bank, N.A. v. Adrian Collymore</u>, 68 A.D.3d 752, 754, 890 N.Y.S.2d 578, 580 (2d Dep't 2009).  In any event, U.S. Bank holds both the Note and the Mortgage, which was assigned to U.S. Bank before the Proof of Claim was filed.

[8] In <u>Greenleaf</u>, the Supreme Judicial Court of Maine outlined eight elements which must be proven to support a judgment of foreclosure.  Six of those elements (concerning evidence of a breach of a condition in the mortgage,

The Note

U.S. Bank has demonstrated that it is the holder of the Note and therefore entitled to enforce the Note against the Debtor. This is so whether U.S. Bank's status is analyzed under Maine or New York law.

Under the Maine Uniform Commercial Code (the "Maine U.C.C."), a mortgage note is a negotiable instrument. 11 M.R.S. § 3–1104(1) ("'[N]egotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (a) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder."); Greenleaf, 2014 ME 89, ¶ 10, 96 A.3d 700, 705. A "holder" of the instrument is a "person entitled to enforce" the instrument. 11 M.R.S. § 3–1301(1). The Maine U.C.C. defines a "[h]older" to include "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." 11 M.R.S. § 1–1201(21)(a). A "[b]earer" is "a person in control of a negotiable instrument . . . that is payable to bearer or indorsed in blank." 11 M.R.S. § 1–1201(5).[9]

Here, the Note provides that the Debtor promises to pay "to the order of Lender. Lender is New Century Mortgage Corporation." (Proof of Claim 5-2, 14-41678-CEC at 5; Claimant's Ex. 2.) The Note is indorsed in blank, making it a negotiable instrument payable to the bearer. See 11 M.R.S. § 1–1201(5). U.S. Bank is the holder of the Note, as it is in possession of the Note indorsed in blank. See id.; 11 M.R.S. § 1–1201(21)(a). As the holder, U.S. Bank is entitled to enforce the Note. 11 M.R.S. § 3–1301(1).

---

notice, and proof of completed mediation under Maine's foreclosure mediation program) do not relate to standing to foreclose, and therefore need not be satisfied to establish standing to file a proof of claim.
[9] The terms "endorse" and "indorse" are used interchangeably in this Decision, as case law and statutes cited in this Decision use both terms.

The Debtor contends that the indorsement is not valid because it appears as a stamp, not a handwritten signature, and because the indorsement appears on the back of the last page of the Note instead of at the end of the last page of the Note.  (Affirmation in Further Support, ECF No. 220, ¶¶ 28-30.)  A valid indorsement, under Maine law, "means a signature . . . that alone or accompanied by other words is made on an instrument for the purpose of: (a) Negotiating the instrument."  11 M.R.S. § 3–1204.  No provision in the Maine U.C.C. requires that an indorsement appear on a specific place on the instrument.  The form of signature, whether by hand or stamped, is also irrelevant.  See Gen. Motors Acceptance Corp. v. Anacone, 160 Me. 53, 63, 197 A.2d 506, 512 (1964) ("It has long been held under the negotiable instruments law that affixing a signature to such an instrument by a rubber stamp is sufficient to fulfill the requirement of a written endorsement, if the stamp is affixed with the intent of using it as an endorsement, and with authority.")

The Debtor also challenges the authority of the indorser to sign on behalf of New Century, because, based on his research on LinkedIn, he believes that the indorser now works as a dental assistant.  (Affirmation in Further Supp., ECF No. 220, ¶ 30.)  The result of the Debtor's online search does not constitute admissible evidence; moreover, the current profession of the indorser is irrelevant as long as the indorser was authorized, at the time of the indorsement, to indorse the Note.  The indorser's signature is presumed to be authentic and authorized.  11 M.R.S. § 3-1308(1); N.Y. U.C.C. Law § 3-307.  As the Official Comments note, "until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid." Official Comment 1 to 11 M.R.S. § 3-1308. See In re Bass, 366 N.C. 464, 470-71, 738 S.E.2d 173, 177-78 (2013) (finding defendant's unsupported assertion that an indorsement was forged or unauthorized insufficient to

rebut presumption of authenticity).  As there is no evidence in the record that the indorser lacked authority to indorse the Note on behalf of New Century, the Debtor's challenge to the validity of the indorsement is rejected.

Analysis under New York law yields the same result.  Under the New York Uniform Commercial Code, a writing is a negotiable instrument if it is signed by the maker, contains an unconditional promise to pay a sum certain in money with no other promise, is payable on demand or at a definite time, and is payable to order or to bearer.  N.Y. U.C.C. Law § 3-104. The Note is a negotiable instrument under New York law: it is payable to the order of New Century; signed by the Debtor; contains an unconditional promise to pay $198,000, plus interest, to New Century; and contains no other promises.  (Proof of Claim 5-2, 14-41678-CEC at 5; Claimant's Ex. 2.)

To transfer a negotiable instrument payable to order, the instrument must be delivered with any necessary indorsement.  N.Y. U.C.C. Law § 3-202(1).  Like Maine law, New York law allows indorsements in blank.  N.Y. U.C.C. Law § 3-204.  "An indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed."  Id. at (2).  "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof."  N.Y. U.C.C. Law § 3-202(2).  Here, the Note is indorsed in blank on the back of the last page of the Note.  Under New York law, this satisfies the requirements for an indorsement in blank. Delivery of a negotiable instrument, under New York law, is defined as a "voluntary transfer of possession."  N.Y. U.C.C. Law § 1-201(15).  "Generally, possession of an endorsed negotiable instrument imports delivery."  Citicorp Int'l Trading Co. v. W. Oil & Ref. Co., 790 F. Supp. 428,

435 (S.D.N.Y. 1992) (citing In re Jennings, 286 A.D. 256, 259, 143 N.Y.S.2d 383, 386 (2d Dep't 1955), aff'd, 1 N.Y.2d 762, 152 N.Y.S.2d 305, 135 N.E.2d 56 (1956)).

Under New York law, therefore, U.S. Bank is the holder of the Note.  See  N.Y. U.C.C. Law § 1-201(21) (defining "holder" to include "the person in possession of a negotiable instrument that is payable . . . to bearer.")  As the holder, U.S. bank may "enforce payment in [its] own name."  N.Y. U.C.C. Law § 3-301.   Because U.S. Bank can enforce the Note under New York law, it has established standing under New York law to file the Proof of Claim.

The Debtor also argues that the validity of the original Note has not been established. (Affirmation in Further Supp., ECF No. 220, ¶¶ 8-19.)  The Debtor argues that he was afforded insufficient time to conduct a "forensic review."  Id., ¶ 11.  It is unclear what such a "forensic review" would entail nor are there any facts in the record which would suggest that such a review is appropriate.  As noted above, the Debtor does not deny that he signed the Note.  Nor has the Debtor introduced evidence that the indorsement signature was unauthorized, as required to overcome the presumption, under both Maine and New York law, that such signature is valid.  See 11 M.R.S. § 3-1308(1); N.Y. U.C.C. Law § 3-307. At the March 17, 2015 hearing, U.S. Bank provided the Court with the original Note, which was admitted into evidence. (Hr'g Tr. 19:17-22:21, March 17, 2015, ECF No. 227.)  The original Note was identical to the copy attached to the Proof of Claim, except that, on the copy, the loan number was redacted, as required by Bankruptcy Rule 9037, and the return address was cut off.  (Proof of Claim 5-2, 14-41678-CEC at 9; Claimant's Ex. 2.)  In short, the record establishes that U.S. Bank is the holder of the Note.

U.S. Bank has demonstrated standing under New York and Maine law to enforce the Note.  Because the Mortgage follows the Note under New York law, U.S. Bank has

demonstrated standing to enforce both instruments, thereby establishing its standing to file the

Proof of Claim.  However, under Maine law, to enforce the Mortgage, U.S. bank, because it is

not the original mortgagee, must show that it is assignee of the Mortgage.

The Mortgage

     Under Maine law, a party seeking foreclosure by civil action must be "the mortgagee or

any person claiming under the mortgagee," and must "produce evidence of . . . all assignments . .

. of the . . . mortgage."  14 M.R.S. § 6321.  "Unlike a note, a mortgage, is not a negotiable

instrument," and, therefore, possession alone, without proof of all assignments, is insufficient to

establish standing under Maine law.  Greenleaf, 2014 ME 89, ¶ 12, 96 A.3d at 706.  U.S. Bank

has produced the Mortgage, executed by the Debtor and New Century, as well as an assignment

of the Mortgage on behalf of New Century to U.S. Bank, as trustee of the Trust.

     The Debtor argues that the assignment of the Mortgage from New Century, by SPS, as

attorney-in-fact, after New Century's dissolution pursuant to its chapter 11 plan, was

unauthorized, therefore void.  (Mot. to Object/Reclassify/Reduce/Expunge Claims: Claim

Number(s): 5, ECF No. 146, ¶¶ 10-13; Affirmation in Further Supp., ECF No. 191, ¶¶ 1, 5-23;

Affirmation in Further Supp., ECF No. 220, ¶¶ 1-7.)  According to the Debtor, because the

assignment is void, U.S. Bank does not own the Mortgage, and therefore lacks standing to

foreclose or to file a proof of claim.

     The Mortgage was executed by the Debtor, in favor of New Century, on August 11,

2005.  (Proof of Claim 5-2, 14-41678-CEC at 27.)  On April 2, 2007, New Century commenced

a chapter 11 case in the District of Delaware.  (07-10416-BLS (Bankr. D. Del.)).  On June 20,

2007, New Century executed the Power of Attorney in favor of SPS.  (First Affirmation in

Opp'n, ECF No. 182 Ex. 2 at 46, ¶ 4).  Among the powers granted to SPS in the Power of

Attorney was the power "[t]o execute . . . and deliver . . . assignments of deed of trust/mortgage and other recorded documents . . .." (First Affirmation in Opp'n, ECF No. 182 Ex. 2 at 46.)  On July 15, 2008, the Delaware Bankruptcy Court entered the First New Century Confirmation Order. (First New Century Confirmation Order, Del. ECF No. 8596-1.)  That order contained the following language:

> The Debtors, if on or prior to the Effective Date, and the Liquidating Trust . . ., if after the Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transaction provided for in this Plain. Additionally, with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the applicable Debtor, if on or prior to the Effective Date, or the Liquidating Trust, if after the Effective Date, shall execute upon written request,  . . . any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Debtor or Liquidating Trustee, as applicable, necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from such Debtor . . . to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trustee, any required assignments of mortgage or instruments of satisfaction, discharge or cancellation of mortgages, mortgage notes or other instruments related to such loan. . . . *Powers of attorney executed by the Debtors prior to their dissolution shall be binding on the Liquidating Trustee, the Liquidating Trust, and the Estates and may be recorded by the holder of such power of attorney with full force and effect notwithstanding the dissolution of the Debtors.*

(emphasis added) Id., ¶ 72.  This provision of the First New Century Confirmation Order made all powers of attorneys executed by New Century binding on the New Century Liquidating Trust and the Liquidating Trustee.

The First New Century Confirmation Order was appealed, though no stay pending appeal was granted. (Second New Century Disclosure Statement, Del. ECF No. 9928-1, at 7.[10])   More than a year after the confirmation of the Original Plan, the District Court reversed the First New

---

[10] The docket entry for the Second New Century Disclosure Statement appears on the Delaware ECF as "Order (A) Approving Disclosure Statement Regarding Modified Second Am. Joint Chapter 11 Plan of Liquidation  . . .," but will be cited as "Second New Century Disclosure Statement."

Century Confirmation Order, finding problems with the distribution scheme and with the treatment of certain classes of creditors under the Original Plan. (Mem. Op. Signed by Judge Sue L. Robinson on 6/16/09, Del. ECF No. 9686; In re New Century TRS Holdings, Inc., 407 B.R. 576 (D. Del. 2009).) The District Court then stayed its reversal of the First New Century Confirmation Order pending appeal to the Third Circuit, and shortly thereafter, the Bankruptcy Court entered an order preserving the status quo (the "Status Quo Order"), pursuant to which the Third Circuit appeal was withdrawn. (Second New Century Disclosure Statement, Del. ECF No. 9928-1, at 8; Status Quo Order, Del. ECF No. 9750.[11]) Under the Status Quo Order, the Liquidating Trustee remained in place pending the negotiation and confirmation of a modified plan to address the problems identified by the District Court. (Status Quo Order, Del. ECF No. 9750, at 2-3.)

On November 20, 2009, the Modified Plan was confirmed. (Second New Century Confirmation Order, Del. ECF No. 9957-1.) The Second New Century Confirmation Order also contained language providing that powers of attorney executed by New Century would continue to be effective and would bind the Liquidating Trustee:

> The Debtors, if on or prior to the Original Effective Date, and the Liquidating Trust . . ., if after the Original Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transaction provided for in this Modified Plan. Additionally, with respect to mortgage loans purchased from one or more of the Debtors prior to or subsequent to the Petition Date, the Liquidating Trust shall execute, upon written request . . . any powers of attorney as shall be prepared by the requesting party and reasonably satisfactory to the Liquidating Trustee . . . necessary to fully effectuate the transfer of such loan or otherwise to effect the appropriate transfer of record title or interest in such loan, including, without limitation, any powers of attorney as may be necessary to allow the purchaser of such mortgage loan from such Debtor . . . to complete, execute and deliver, in the name of and on behalf of the applicable Debtor or the Liquidating Trust, any required assignments of mortgage . . . related to such

---

[11] The docket entry for the Status Quo Order appears on the Delaware ECF as "Order Granting Motion of the Trustee Preserving the Status Quo . . .," but will be cited as "Order Granting Motion of the Trustee Preserving the Status Quo . . .

> mortgage loan. . . . *Powers of attorney executed by the Debtors pursuant to the Original Plan prior to their dissolution shall be binding on the Liquidating Trustee, the Liquidating Trust, and the Estates and may be recorded by the holder of such power of attorney with full force and effect notwithstanding the dissolution of the Debtors.*"

(emphasis added) (Second New Century Confirmation Order, Del. ECF No. 9957-1, ¶ 69.)

The Second New Century Confirmation Order provides that "[p]owers of attorney executed by the Debtors *pursuant to the Original Plan* prior to their dissolution shall be binding on the Liquidating Trustee . . . ." (emphasis added)  Id.  The words "pursuant to the Original Plan" are not contained in the First New Century Confirmation Order, and it is unclear what, if anything, was intended by their inclusion in the Second New Century Confirmation Order.  A reading of the disclosure statement filed in connection with the Modified Plan, as well as the terms of the Modified Plan, and the Second New Century Confirmation Order, makes it clear that the intent was to continue in effect the provisions of the Original Plan and the First New Century Confirmation Order to the extent not in conflict with the Modified Plan. (Second New Century Disclosure Statement, Del. ECF No. 9928-1, at 8 (noting that, "the Liquidating Trustee proposes the Modified Plan to address the concerns raised by the District Court [in reversing the First New Century Confirmation Order] while also preserving the integrity of the Original Plan and the complex and interrelated compromises that were negotiated by all of the major creditor constituencies that formed the basis of the Original Plan."); Modified Plan, Del. ECF No. 9957-2,3,4,5; Second New Century Confirmation Order, Del. ECF No. 9957-1.)

Furthermore, under the Original Plan, the dissolution of New Century was effectuated immediately.  (Original Plan, Del. ECF No. 8596-2, at 49-50.)  Although the First Confirmation Order was later reversed, the dissolution of New Century was unaffected by the reversal, as the order reversing the First New Century Confirmation Order was stayed and the Delaware Bankruptcy Court, after remand, entered the Status Quo Order which maintained the Liquidating

Trustee in control of the New Century's assets pending negotiation and confirmation of the

Modified Plan. (Second New Century Disclosure Statement, Del. ECF No. 9928-1, at 8.)

Therefore, it appears that New Century could not have executed any power of attorney "pursuant

to the Original plan prior to their dissolution," if "pursuant to the Original Plan" is understood to

mean "after the effective date of the Original Plan."

It is clear that the intent of the Second New Century Confirmation Order was not to

eliminate the provision stating that powers of attorney previously executed by New Century

would be binding on the Liquidating Trustee; if that result had been intended, the language

would simply have been stricken. It is clear, rather, that the intent was to carry forward that

provision of the Original Confirmation Order, so that holders of New Century powers of attorney

could continue to function as they did prior to the confirmation of the Original Plan, and that the

Second New Century Confirmation Order must be understood to so provide.

On April 18, 2012, SPS, as attorney-in-fact for New Century, assigned the Mortgage to

U.S. Bank, as trustee of the Trust. (Proof of Claim 5-2, 14-41678-CEC at 34.) Under the Terms

of the New Century confirmation orders, the Power of Attorney was binding on the New Century

Liquidating Trust and the Trustee at the time SPS executed the assignment of the Mortgage to

U.S. Bank. [12] The Debtor's argument that the assignment of the Mortgage was unauthorized is

therefore rejected.

---

[12] The Debtor is not the first to challenge an assignment of loan documents which occurred post-confirmation in the
New Century bankruptcy. Courts have dismissed such arguments on different grounds. See Lizza v. Deutsche Bank
Nat. Trust Co., 1 F. Supp. 3d 1106, 1116-17 (D. Haw. 2014) (holding that the plaintiffs lacked standing to challenge
the assignments and that a post-petition assignment without authorization by the liquidating trustee is voidable by
the trustee under § 549 of the Bankruptcy Code, but not void as a matter of law); In re Baber, 523 B.R. 156, 160-62
(Bankr. E.D. Ark. 2014) (holding that that the debtors lacked standing to attack the power of attorney or the
assignment because the debtors they were not a party to the assignment and because they failed to allege an injury
resulting from the assignment.); In re Wright, No. 10-03893, 2012 WL 27500, at *3 (Bankr. D. Haw. Jan. 5, 2012)
(holding that the date of the assignment of the mortgage was irrelevant, even if it was after the effective date of the
Liquidating Trust, because the note had been transferred prior to the New Century bankruptcy and because, under
common law, the mortgage automatically transferred with the underlying note). One court found this argument

<u>The Pooling and Service Agreement</u>

The Debtor contends that Wells Fargo, as master servicer, and U.S. Bank, as trustee, failed to comply with the terms of the Trust's pooling and servicing agreement because the Mortgage was not timely assigned under the terms of that agreement.  (Affirmation in Further Supp., ECF No. 220, ¶¶ 17, 36-60; Affirmation in Further Supp., ECF No. 191, ¶¶ 40-43; Mot. to Object/Reclassify/Reduce/Expunge Claims: Claim Number(s): 5, ECF No. 146, ¶¶ 8, 13.) However, the date of acquisition of the Note and Mortgage by the Trust is irrelevant to the validity of the Proof of Claim, as long as both were held by the Trust prior to the filing of the Proof of Claim.

It is well established that a non-party to a pooling and servicing agreement lacks standing to assert non-compliance with the terms of that agreement as a defense to enforcement of a note and mortgage by a trust.  <u>Rajamin v. Deutsche Bank Nat. Trust Co.</u>, 757 F.3d 79, 86-87 (2d Cir. 2014); <u>In re Daly</u>, No. 11-22368 (RDD), 2015 WL 196509, at *7 (Bankr. S.D.N.Y. Jan. 14, 2015).  "Under New York law, only the intended beneficiary of a private trust may enforce the terms of the trust."  <u>Rajamin</u>, 757 F.3d at 88 (collecting cases).  <u>See</u> <u>also</u> <u>Ocampo v. JP Morgan Chase Bank, N.A.</u>, No. CV 14-0008, 2015 WL 1345282, at *7 (E.D.N.Y. Mar. 24, 2015) ("In light of the Second Circuit decision in <u>Rajamin</u> and the overwhelming body of case law in accord with that ruling, the Court finds that Plaintiffs lack standing to assert a securities fraud claim as a non-party to the assignment agreements at issue."); <u>Karamath v. U.S. Bank, N.A.</u>, 2012 WL 4327613, at *7 (E.D.N.Y.2012) (holding that mortgagor "is not a party to the PSA or to the Assignment of Mortgage, and is not a third-party beneficiary of either, and therefore has no standing to challenge the validity of that agreement or the assignment"), <u>rep. and</u>

---

sufficiently plausible to deny a mortgagee's motion to dismiss the mortgagors' action seeking to enjoin the mortgagee from foreclosing; however, that court did not note the provisions of the confirmation orders discussed above.  <u>Ross v. Deutsche Bank Nat. Trust Co.</u>, 933 F. Supp. 2d 225 (D. Mass. 2013).

recommendation adopted by, 2012 WL 4327502 (E.D.N.Y.2012); Barnett v. Countrywide Bank, FSB, 60 F.Supp.3d 379, 387-88 (E.D.N.Y. 2014) (stating that the plaintiff mortgagor lacks standing to challenge the securitization process of the mortgage); Obal v. Deutsche Bank Nat. Trust Co., 2015 WL 631404, at *3–4 (S.D.N.Y. 2015) (following the reasoning of Rajamin and granting the motion to dismiss mortgagor's complaint challenging the validity of the assignment of his mortgage for lack of standing); Berezovskaya v. Deutsche Bank Nat. Trust Co., 2014 WL 4471560 (E.D.N.Y. 2014), rep. and recommendation adopted, Berezovskaya v. Deutsche Bank Nat. Trust Co., 2014 WL 4470786 (E.D.N.Y. 2014) (holding that the plaintiff had no standing to assert claims based on the fraudulent and improper transfer of mortgage documents as a non-party to the assignment agreement).

The Debtor contends that he is not challenging the Trust's compliance with the PSA because he seeks to enforce the PSA, but rather to demonstrate that the transfer to the Trust was void and that therefore the Trust does not hold the Note and Mortgage. (Affirmation in Further Supp., ECF No. 220, ¶ 53.) Even if the Trust acquired the Mortgage in violation of the PSA, this fact would not render the transfer of ownership of the Note and Mortgage to the Trust a nullity, as the Debtor asserts. The Second Circuit was confronted in Rajamin with the argument that failure to comply with a pooling and service agreement rendered a trust's acquisition of loans and mortgages void, and rejected it, explaining that, "we conclude that as unauthorized acts of a trustee may be ratified by the trust's beneficiaries, such acts are not void but voidable; and that under New York law such acts are voidable only at the instance of a trust beneficiary or a person acting in his behalf." Rajamin, 757 F.3d at 90. Because the Rajamin plaintiffs, like the Debtor, were not beneficiaries of the trust at issue, the court concluded that "[t]he law of trusts provides no basis for plaintiffs' claims." Id.

For these reasons, the Debtor's objection to U.S. Bank's standing to file the Proof of

Claim based upon alleged noncompliance with the PSA in connection with the transfer of the

Note or Mortgage to the Trust is rejected.

<u>The Debtor's Claim That the Trust May Not Hold a Note Indorsed in Blank</u>

The Debtor argues that under New York law a trust may not hold a note indorsed in

blank.  According to the Debtor, it follows that the Note is not lawfully an asset of the Trust, and

therefore cannot be enforced by the Trust.[13]  (Affirmation in Further Support, ECF No. 191, ¶¶ 3,

at 31-34.)

The premise of this argument, that New York Law prohibits a trust from holding a note

indorsed in blank, is incorrect.  The Debtor looks to EPTL § 7-2.1(c) as the basis this claim:

> A trust as described in sections 9-1.5, 9-1.6 and 9-1.7 of the estates, powers and
> trusts law, including a business trust as defined in subdivision two of section two
> of the general associations law, may acquire property in the name of the trust as
> such name is designated in the instrument creating said trust. Any property, so
> acquired can be conveyed, encumbered or otherwise disposed of only in such
> name by a conveyance, encumbrance or other instrument executed by:
> (1) the person or persons authorized by the instrument creating said trust; or
> (2) the person or persons authorized by a resolution duly adopted by the trustees;
> or
> (3) a majority of the trustees unless the instrument creating said trust otherwise
> provides.

N.Y. EPTL § 7-2.1.  According to the Debtor, the statutory language stating that a trust "may

acquire property in the name of the trust as such name is designated in the instrument creating

the said trust" precludes a trust created under New York law from owning a note indorsed to

bearer or in blank.

The Debtor's reliance on this provision is mistaken.  The quoted language provides that a

trust "may" (not shall) acquire property in the name of the trust, and that if it does so, only

---

[13] The New York Estates, Powers, and Trusts Law ("EPTL") applies to the Trust, which was created under New York law.  <u>See</u> Asset Backed Securities Corp., Pooling And Servicing Agreement (Form 8-K), (Dec. 22, 2005) at § 11.04.

authorized parties may convey, encumber, or dispose of such property.  The statute does not limit

the type of property a trust may hold under New York law.  As explained by another court

confronted with a similar argument, "[Section 7-2.1] provides that a trust may acquire property

in the name of the trust and, if property is in fact acquired in the name of the trust, can only be

conveyed, encumbered, or disposed of in the name of the trust and by an authorized individual.

The provision simply allows a trust to acquire property in its name and in no way restricts the

means by which a trust may acquire property."  In re Wright, No. 10-03893, 2012 WL 27500, at

*4 (Bankr. D. Haw. Jan. 5, 2012) (applying New York law).[14]

EPTL § 7-2.1 provides no statutory basis to challenge U.S. Bank's standing to file the

Proof of Claim, and the Debtor's argument that it does is rejected.

Possibility of Competing Claims to the Note

The Debtor states that in objecting to U.S. Bank's standing to file the Proof of Claim, he

is motivated by concern about the possibility of duplicative or competing claims to the Note and

Mortgage.  In the Debtor's words, "[t]he homeowner should only have to pay once."

(Affirmation in Further Support, ECF No. 220, ¶ 57.)  However, the Maine U.C.C. provides

protection for an obligor in this circumstance under 11 M.R.S.A. § 3-1602 (1)[15]:

> An instrument is paid to the extent payment is made:
> (a) By or on behalf of a party obliged to pay the instrument; and
> (b) To a person entitled to enforce the instrument.

---

[14] The practice commentaries to EPTL § 7-2.1(c) note that the purpose of this provision is to allow investment and business trusts to hold property in the name of the trust, thereby avoiding the burden of requiring the signatures of all the trustees to sell or encumber trust property:

> Those trusts frequently have numerous trustees, who rotate in and out as new trustees are elected and former trustees die or resign. They also typically acquire and dispose of many properties and mortgages. To require the names of all the trustees and their signatures to sell or mortgage the property proved cumbersome. The legislature wanted to make these trusts parallel to partnerships, which can hold property in the partnership name, so it enacted subparagraph (c) by L.1973, ch. 1031, § 1, to permit these trusts to acquire property in the name of the trust. paralleling provisions of New York Partnership Law.

Turano, Practice Commentary, McKinney's Cons. Laws of N.Y., Book 7, N.Y. EPTL § 2.1.

[15] See N.Y. U.C.C. Law § 3-603 for similar language under the New York Uniform Commercial Code.

> To the extent of the payment, the obligation of the party obliged to pay the instrument is discharged even though payment is made with knowledge of a claim to the instrument under section 3-306 by another person.

Under this provision, a mortgagor who makes payment on a note, to a party entitled to enforce the note, will be discharged in the amount of the payment, even if there is a competing claim to the note by another entity.   Although this provision lists exceptions, such as when the payor has knowledge that payment is prohibited due to an injunction or similar process of a court of competent jurisdiction, or when the payor knows that the instrument is stolen and pays the person in wrongful possession, none of the exceptions apply to the present facts.  See id. at (2). Consequently, in the hypothetical case where a third party were to claim ownership of the Note and Mortgage and attempt to enforce the Note against the Debtor, or to foreclose the Mortgage, the amount owed under the Note to that hypothetical third party, and secured by the Mortgage, would be reduced by any payments made to the Trust, as holder of the Note.

## **CONCLUSION**

Because U.S. Bank has established standing to enforce both the Note and Mortgage under applicable law, it has established standing to file the Proof of Claim.  For the foregoing reasons, the Debtor's objection to the Proof of Claim is denied.  Any other arguments raised by the Debtor, but not addressed in this Decision, were considered and determined to be without merit. A separate order will issue.



**Dated: Brooklyn, New York**
**July 21, 2015**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**